RECEIVED
MAR - 5 2008
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

FILED
MAR 05 2008
DAVID CHEWS, CLERK
By _____ Deputy

Maurice Clifton
28332-077

FCC Yazoo Low - 1BU
P.O. Box 5000
Yazoo City, MS 39194-5000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF MISSISSIPPI

| UNITED STATES OF AMERICA, | CASE NO. 3:97-CR-006 |
|---|---|
| Plaintiff-Respondent, | |
| vs | MOTION TO REDUCE THE TERM OF IMPRISONMENT UNDER 18 USC § 3582(c)(2) |
| MAURICE CLIFTON, | |
| Defendant-Petitioner. | |

## INTRODUCTION

Defendant-Petitioner Maurice Clifton (Hereinafter, "Clifton") respectfully requests this Honorable Court to reduce the term of his imprisonment pursuant to **18 USC § 3582(c)(2)**, which authorizes a defendant to move for a reduction of his sentence when a subsequent amendment to the Sentencing Guidelines lowers his relevant sentencing range. Clifton requests a full resentencing hearing and requests that counsel be appointed to represent him in any future or further proceedings.

On December 10, 2007, the Supreme Court in **_Kimbrough v. United States_, 128 S. Ct. 558, 570 (2007)** ruled that judges can consider the unfairness of the 100-to-1 ratio between **crack** cocaine and powder cocaine sentences and may impose a sentence below the crack guideline in cases where the guideline sentence is too harsh. Under **_United States v. Booker_, 125 S. Ct. 738 (2005)**, the cocaine Sentencing Guidelines, like all other Guidelines, are advisory only. A judge may determine that, in a particular case, a within-Guidelines sentence is "greater than necessary"

1

to serve the objectives of sentencing, and in doing so, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses.

On December 11, 2007, the United States Sentencing Commission voted unanimously to give retroactive effect to the November amendment to the Guidelines that reduces penalties for crack cocaine offenses. Retroactivity of the amendment will become effective March 3, 2008.

Also included in the November Amendments was Amendment 12, which addresses a defendant's criminal history score. The amendment responds to concerns that; (1) some misdemeanor and petty offenses counted under the guidelines involve conduct that is not serious enough to warrant increased punishment upon sentencing for a subsequent offense; (2) the presence of a prior misdemeanor or petty offense in a rare case can affect the sentence in the instant offense in a way that is greatly disproportionate to the seriousness of the prior offense and; (3) jurisdictional differences in defining misdemeanor and petty offenses can result in inconsistent application of criminal history points for substantially similar conduct.

As a result of the amendment(s) to the Guidelines, which lowers the guideline range applicable to him, Clifton submits that this Honorable Court may re-sentence him under the advisory Guidelines regime, as to his entire sentence.

**BACKGROUND**

Clifton was convicted following a trial by jury and was sentenced on May 20, 1997. Clifton was found guilty on Counts One and Two of the Indictment. Count One charged Clifton with distribution of more than 5 grams of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B). Count Two charged Clifton with conducting a financial transaction with intent to promote and carry on a specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

Clifton's base offense level of 38 for Count One was calculated by the probation department and a sentence of 400 months was imposed based on 54.79755 kilograms of *crack cocaine*. Clifton's base offense level was increased 4 levels pursuant to USSG § 2B1.1(a)(1) for an organizer or leader role in the offense. In calculating Clifton's criminal history category the probation department calculated 3 points as the subtotal establishing a criminal history category of III.

At the sentencing hearing held on May 20, 1997, defense counsel vigorously argued that the amount of drugs determined by the probation officer was, at the very least, questionable in that the information was obtained by an IRS agent and that the IRS agent had relied on information given by drug addict Thomas "Bilbo" Spann and drug dealer Wyatt Williams. Both Spann and Williams became informants for the government in exchange for lesser sentences. Counsel argued, and the Court overruled, that the government had information that was not provided to defense counsel that would prove error in the amount of drugs. It should be noted that the two informants, Spann and Williams, who admitted that he [Williams] was the drug supplier in this case, received sentences of 31 months and 24 months respectively, compared to Clifton's sentence of 400 months. Not only was defense counsel denied access to impeaching evidence regarding the two informants, the government objected to defense counsel's attempt to impeach their testimonies regarding the amount of drugs.

**ARGUMENT**

The district court is required to "resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(c)(1), Fed. R. Crim. P."(8) USSG § 6A1.3(b). In turn, Rule 32 provides that the district court must make a ruling on disputed portions of the PSIR that affect

3

the sentence. Fed.R.Crim. P. 32(i)(3)(B). *See also*, **United States v. Williams, 02-2084 (10th Cir June 30, 2004).**

Rule 32(i)(3)(B) requires that, at sentencing, a court must, "for *any* disputed portion of the Presentence report or *other* controverted matter," attach to the PSR findings of fact addressing the controverted matter or determine that such findings are unnecessary "either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "If the district court fails to comply with Rule 32[(i)(3)(B)], we must remand for the court to either make the necessary findings . . . or enter a declaration that it did not take the controverted matters into account in sentencing the defendant." **United States v. Pedraza, 27 F.3d 1515, 1530-31 (10th Cir. 1994).** Due Process requires that a defendant be sentenced on the basis of accurate information. **United States v. Sandles, 80 F.3d 1145 (7th Cir. 1996).**

The Court in this case did not impose the least restrictive sanction necessary to achieve the specified purposes of sentencing pursuant to Title 18, Section 3553. The Court was unreasonable in concluding, and failed to ascertain, that the judgment of sentence represented the least severe punishment necessary to achieve the specified purposes of the criminal law. A district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing specified in § 3553(a)(2). Therefore, if the court did not impose the least burdensome sanction that would have satisfied the specified purposes of punishment, the un-parsimonious sentence should be vacated. Also see, **Kimbrough v. United States, 128 S.Ct. 558, 570 (2007)** (section 3553(a) "as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing").

4

On December 11, 2007, the United States Sentencing Commission voted unanimously to apply amendment retroactively for crack cocaine offenses; the effective date for retroactivity is set for March 3, 2008. As a result of the amendment to the Guidelines, which lowers the guideline range applicable to him, Clifton requests that this Honorable Court conduct a resentencing hearing pursuant to 18 USC § 3582(c)(2) wherein Clifton may be re-sentenced de novo under the advisory Guidelines regime, as to his entire sentence. ***United States v. Booker*'s** requirement that the district courts treat the United States Sentencing Guidelines as advisory applies to the resentencing of defendants pursuant to 18 U.S.C. § 3582(c).

Regardless of whether § 3582(c)(2) re-sentencings constitute full de novo sentencings, they clearly require the Court to impose a sentence based upon its evaluation of the § 3553(a) factors, a process that cannot be circumscribed by a policy statement. The issue is analogous to pre-***Booker*** cases in which courts held that once the authority to reduce a sentence under § 3582(c)(2) is triggered by a retroactive guideline, the sentencing court must consider *all* relevant statutory sentencing criteria currently in existence, even if such criteria did not exist at the time of the original sentencing and is otherwise unrelated to the triggering amendment. Set forth below are issues that the Court may wish to take into consideration when reviewing this case.

**DRUG AMOUNT AND TYPE**

In reaching the amount of drugs for the purpose of calculating Clifton's Base Offense Level, the Probation Department relied on information provided by an IRS agent.

At sentencing Defense counsel presented to the Court during direct examination that the IRS agent's information to the probation officer included a statement from informant Spann that he had purchased crack cocaine from Clifton on a weekly bases from January, 1992 up through August, 1996. However, Spann also provided a contradictory statement to the probation officer

stating that he had "moved away" after his "initial contact" with Clifton (January, 1992) and moved back to Mound Bayou in 1993. That is at least one year during the "January, 1992 up through August, 1996" that Spann did not purchase cocaine from Clifton. Spann also reported that there were other individuals that sold cocaine for Clifton. However, those "other individuals" were never identified. The drug amounts calculated by the probation officer and adopted by the Court were erroneous because they were based on the contradictory information provided by informant Spann.

There was no proof beyond a preponderance of evidence that Clifton had been in possession of all the amounts set forth in the PSR based on the unreliable hearsay of Spann or Williams.

Findings as to the quantity of drugs for which a defendant was responsible, for purpose of computing sentence, must be supported by preponderance of the evidence. *United States v. Morsley*, 64 F.3d 907 (4th Cir. 1995); *United States v. Vaandering*, 50 F.3d 696 (9th Cir. 1995). Hearsay and innuendo are not preponderance nor is he said, she said.

In *United States v. Riley*, 142 F.3d 1254 (11th Cir.1998) it was held that the court may not rely on speculation to measure an amount of cocaine for sentencing purposes. The court, in *Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999) responded that sentencing courts are required to err on the side of caution when calculating drug quantities

Congress created a statutory scheme where the type and quantity of a controlled substance were not elements of the offense but merely sentencing factors to be decided by a judge, not a jury, and by a preponderance of the evidence rather than by proof beyond a reasonable doubt. The Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), held that such statutory schemes are unconstitutional, at least to the extent that the factors at issue increase the available statutory maximum sentence. *Apprendi* essentially overruled the federal court's

6

holdings that drug type and quantity were mere sentencing factors. Every federal court to consider the issue since has been quick to reverse years of precidential decisions, and to hold that the provisions on drug quantity and type, found in the penalty section of the statute at **§ 841(b)**, are in fact elements of the offenses described in **§§ 841(a)** and **846**. *See, e.g.,* <u>**United States v. Doggett**</u>**, 230 F.3d 160, 164-65 (5th Cir. 2000)**.

The courts cannot now rewrite the controlled substance statutes so that drug type and quantity are called "elements" in contradiction of several years of precedent holding that Congressional intent was directly to the contrary. Furthermore, the unconstitutional portions of the statutes cannot be severed from the remaining parts, leaving no way to read the statutes as constitutional.

"*Crack cocaine*" was used in calculating Clifton's base offense level and because the Sentencing Commission lowered the guideline range for crack offenses for those sentenced on or after November 1, 2007 in order to partially alleviate the urgent and compelling problems of over-incarceration and unwarranted disparity resulting from the 100-to-1 powder/crack ratio, and because the Commission voted that the amendment should apply to persons sentenced before November 1, 2007 because "the statutory purposes of sentencing are best served by retroactive application of the amendment" Clifton is entitled to § 3582 (c) (2) proceedings.

Furthermore, because the Court relied on improper facts in enhancing Clifton's offense level at sentencing, his sentence was unreasonable.

**ROLE IN THE OFFENSE**

Clifton's base offense level was enhanced 4 levels pursuant to U.S.S.G. § 3B1.1 based on the probation officer's report and the Court's determination that Clifton was an organizer or leader. Clifton objected to the PSR information which claimed that this enhancement applied to him.

7

For an adjustment pursuant to U.S.S.G. § 3B1.1 to apply, the record must support a finding that Clifton organized or led his co-conspirators in some way. Application note 4 to U.S.S.G. S 3B1.1 directs the court to consider the following factors when determining whether a defendant was an organizer or leader:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, **and the degree of control and authority exercised over others**. *Ephasis added.*

The record clearly evidences that Clifton was not the organizer or leader in this case because, as the record (PSI) shows, Clifton purchased his drugs from Wyatt Williams and gave, as well as sold cocaine to Spann (Spann stated that Clifton gave him the "shake" meaning crumbs left after the crack cocaine was cut) and sold cocaine to one other individual named Keith Reynolds.

Clifton cannot be characterized as an organizer or leader because; (1) he allegedly sold cocaine to *two* people, not *five* ore more; (2) nowhere in the PSR does it show that Clifton had any control over his co-conspirators; (3) nowhere does it show that he had organizational or decision-making authority.

In deciding whether to apply the enhancement, courts consider: [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Spann reported that there were other individuals that sold cocaine for Clifton. However, those "other individuals" were never identified.

8

Because the facts supporting Clifton's exceptional sentence were neither admitted by him nor found by the jury, the enhancement violated his Sixth Amendment right to a trial by jury.

It is clear that this enhancement deserves further review in light of recently established case law and that the time for further review would be at a 18 USC § 3582(c)(2) resentencing hearing.

**CRIMINAL HISTORY CATEGORY**

Also included in the November Amendments was Amendment 12, which addresses a defendant's criminal history score. The amendment responds to concerns that (1) some misdemeanor and petty offenses counted under the guidelines involve conduct that is not serious enough to warrant increased punishment upon sentencing for a subsequent offense; (2) the presence of a prior misdemeanor or petty offense in a rare case can affect the sentence in the instant offense in a way that is greatly disproportionate to the seriousness of the prior offense and (3) jurisdictional differences in defining misdemeanor and petty offenses can result in inconsistent application of criminal history points for substantially similar conduct. The Commission determined that prior misdemeanor and petty offenses that receive such a relatively minor default sentence should not be counted for criminal history purposes.

Clifton's criminal history category was based on a 1993 charge for "exhibiting a weapon" and was fined or assessed ninety-four dollars ($94.00); a 1994 charge of "assault to create fear" and was fined or assessed sixty-nine dollars ($69.00) and; a 1996 charge of "simple assault" and was ordered to pay a fine of five hundred and seventy-five dollars ($575.00) or serve six (6) months on the county farm. Clifton was given one (1) point for each of the above charges.

The charges for which Clifton was given points which increased his criminal history category and severely lengthened his sentence are of the same type that the Sentencing Commission

9

determined as being "misdemeanor and petty offenses that receive such a relatively minor default" and should not have been counted for criminal history purposes.

Furthermore, Clifton was not informed prior to going to trial that his prior convictions would be used to enhance his sentence. The Court was without authority to rely on prior convictions to enhance Clifton's sentence. Judges are prohibited from making a finding that raises a defendant's sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant. Furthermore, Guidelines do not permit use of an arrest record to jack up a defendant's sentence. *See*, **United States v. Walker**, 98 F. 3d 944 (7th Cir 1996). Any fact sufficient to raise the limit of the possible federal sentence must be found by a jury, absent a waiver by the defendant.

In **Shepard v. United States**, (No. 03-9168) 544 U.S. 13 (2005) 348 F.3d, *Justice Ginsburg*, concluded in Part III that "the rule in the **Jones v. United States**, 526 U. S. 227, 243, n. 6, and **Apprendi v. New Jersey**, 530 U. S. 466, 490, line of cases--that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, absent a waiver by the defendant--is also relevant to sentencing."

The Courts in **Jones**, **Apprendi**, **Blakely**, and **Booker** have all upheld the Sixth and Fourteenth Amendment rights requiring that any facts that subject defendants to heightened punishment must be found by a jury beyond a reasonable doubt. Explaining that "When a judge inflicts punishment that a jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to punishment, (citation omitted), and the judge exceeds his proper authority."

10

**POST CONVICTION REHABILITATION**

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. However, Clifton submits that his rehabilitation efforts while incarcerated may be considered at the time of his resentencing, and will submit evidence of his post-conviction rehabilitation by submitting "certificates of achievement" at the time of his resentencing.

In remanding to the district court for consideration whether the defendant's steps towards rehabilitation warranted a downward departure in ***United States v. Reyes*, Docket No. 96 - 1790 (2nd Cir.)(Argued: June 5, 1997 Decided: September 9, 1997)**, the court answered the question of whether the law forbids downward departure based on the defendant's conduct in prison while serving the sentence initially imposed. At his resentencing hearing, defendant *Reyes* sought a downward departure based on evidence of his rehabilitation during his several years of incarceration. *Reyes* contended that he should receive a downward departure for his post-conviction rehabilitative efforts during his incarceration. He proffered evidence of his rehabilitation in prison. The United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge ) declined to depart, not because it found departure unwarranted on the facts, but because it believed departure was forbidden in these circumstances. The court found nothing in the pertinent statutes or the Sentencing Guidelines that prevents a sentencing judge from considering post-conviction rehabilitation in prison as a basis for departure if resentencing becomes necessary.

"The Sentencing Reform Act of 1984 (the "Act") invites the sentencing court to consider departure from the range provided by the Sentencing Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); see also USSG Ch. 1 Pt. A, intro. Comment. (4)(b). Furthermore, the Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate. See USSG § 1B1.1(i).

In making this inquiry, the sentencing court begins by considering whether some aspect of the case" take[s] it outside the Guidelines' 'heartland' and make[s] of it a special, or unusual, case." *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993) (Breyer, C.J.); see also *Koon*, ___ U.S. at ___, 116 S. Ct. at 2045; *United States v. Merritt*, 988 F.2d 1298, 1306 (2d Cir. 1993), cert. denied, 508 U.S. 961, 113 S. Ct. 2933 (1994). Unless the Guidelines explicitly forbid departure, the sentencing court may depart from the guidelines range to take into account factors that the Sentencing Commission did not consider at all. The sentencing court may also depart, "even though the reason for departure is taken into consideration in the guidelines," if it finds that "in light of unusual circumstances, the guideline level attached to that factor is inadequate." [1] USSG § 5K2.0, p.s. We noted in *Merritt* that "consideration of a factor by the Commission does not bar departure." *Merritt*, 988 F.2d at 1311. As the Guidelines state, "[w]ith . . . specific exceptions . . . the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." USSG Ch.

12

1 Pt. A, intro. comment. (4)(b). In short, absent express prohibition, a sentencing court "is free to consider, in an unusual case, whether or not the factors that make it unusual . . . are present in sufficient kind or degree to warrant a departure." *Rivera*, **994 F.2d at 949**.

We have previously found that the Guidelines did not adequately consider rehabilitation efforts undertaken at various times. For example, we concluded in *United States v. Maier*, **975 F.2d 944, 948 (2d Cir. 1992)**, that a defendant's post-offense rehabilitation from narcotics addiction was a factor not adequately considered in the Guidelines, and thus was a permissible basis for a downward departure. We observed that "awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," id., can remove a case from the heartland of typical cases, thus constituting a valid basis for departure. See also *United States v. Workman*, **80 F.3d 688, 701 (2d Cir. 1996)** ("[P]ost arrest rehabilitation efforts by . . . defendants may justify downward departures under appropriate circumstances."); *United States v. Rodriguez*, **724 F. Supp. 1118 (S.D.N.Y. 1989)**.

We see no significant difference between the post-offense rehabilitation that we found in *Maier* to furnish a legally permissible grounds for departure and rehabilitation achieved in prison between imposition of the original sentence and resentencing. When the trial court undertook to resentence *Reyes* after vacating his § 924(c)(1) conviction, it was required to consider him as he stood before the court at that time. Had *Reyes*, for example, rendered assistance to the government by cooperating since his initial sentence, we see nothing in the statutes or the Guidelines that would have

13

precluded the court from taking that conduct into account under § 5K1.1. Likewise, if the defendant achieved a rehabilitation sufficiently impressive to be considered "atypical" and to take his case out of the heartland, we see no reason why this should not be considered, as in *Maier*, a basis for departure. See ***United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995)** (affirming district court's authority to depart downwardly on resentencing because of defendant's drug rehabilitation efforts, including acceptance in a selective drug treatment program available only if the departure was granted).

The successful rehabilitation of a criminal, on the other hand, is a valuable achievement of the criminal process. The Act recognizes this by requiring sentencing courts to consider "the need for the sentence imposed . . . to provide the defendant with needed educational and vocational training . . . or other correctional treatment . . . ." 18 U.S.C. § 3553(a)(2)(D); see *Maier*, 975 F.2d at 946-47; *Williams*, 65 F.3d at 305.

## APPOINTMENT OF COUNSEL

The Criminal Justice Act requires counsel for any financially eligible person who is entitled to appointment of counsel under the Sixth Amendment. For reasons of efficiency, accuracy, and simple fairness, all potentially eligible prisoners, including those filing pro se motions should be represented by either the Defender or CJA counsel. Given the complexity of the issues, the new fact-finding invited by revised U.S.S.G. § 1B1.10, and the need for individualized sentencing determinations, defense counsel will further the statutory sentencing goals embodied in the crack guideline amendment. The Supreme Court held that *Gideon* and its progeny "clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a

14

criminal proceeding where substantial rights of a criminal accused may be affected," and that sentencing, including a subsequent change in sentence, is such a critical stage. In ***Townsend v. Burke*, 334 U.S. 736, 740-41 (1948)**, the Court found pre-*Gideon* that even though due process did not generally require the state to provide counsel when accepting a guilty plea and imposing sentence in a non-capital case, the absence of counsel violated due process when the defendant was sentenced on the basis of assumptions that were materially untrue. The Court said: "In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." The same rationale applies to Section 3582(c)(2) hearings, where defense counsel is needed to correct errors in calculating the amended guideline range and in any information offered by the government or the probation officer in support of a higher sentence or in opposition to the defendant's claims.

## CONCLUSION

The Court incorrectly made factual findings based on a preponderance of the evidence standard, and used these finding to support sentence enhancements, which was in violation of Clifton's Sixth Amendment rights.

When considering reducing his sentence, Clifton requests that the Court consider the facts and arguments set forth above, as well as some of the recent decisions as they may apply to his case.

In ***United States v. Booker*, 125 S. Ct. 738 (2005)** the defendant challenged his sentence on the ground that the sentencing guidelines violated the Sixth Amendment insofar as they permit the judge to find facts, other than those relating to a defendant's criminal history, that determine the defendant's sentencing range and the court agreed, reversing the defendant's sentence. On

15

January 12, 2005 the Supreme Court in **Booker** determined that the Federal Sentencing Guidelines limit the severity of the sentence that a judge can lawfully impose on a defendant to the facts found by the jury at trial.

See also, **United States v. Hicks**, 472 F.3d 1167, 1172-73 (9th Cir. 2007) ("to the extent that policy statements are inconsistent with **Booker** by requiring that the Guidelines be treated as mandatory, the policy statements must give way").

Under **United States v. Booker**, the cocaine Sentencing Guidelines, like all other Guidelines, are advisory only, and the court of appeals erred in holding that a sentence outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses. A judge may determine that, in a particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing, and in doing so, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses. **Kimbrough v. United States**, No. 06-6330 (Supreme Court **December 10, 2007).**

Clifton's sentence far exceeded that which should have been imposed. The government manipulated the Guidelines to achieve a certain sentence based on facts not contained in the Indictment, not admitted to by Clifton, and not found by the jury.

Clifton's base offense level for Count One should be no more than Level 26 and his Criminal History Category no more than I. A base offense level of 26 with a criminal history category results in a Guideline range of 63 to 78 months.

Respectfully submitted this ___3rd___ day of March, 2008.

_____
Maurice Clifton, pro se

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Motion pursuant to 18 USC § 3582(c)(2), has been sent this 3rd day of March, 2008 by placing the same in the United States Mail, First Class postage prepaid for delivery to;

Chad Lamar
Assistant United States Attorney
P.O. Box 886
Oxford, MS 38655

*Maurice Clifton*
Maurice Clifton

Mailed pursuant to the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266 (1988)